### AMBROSE WILLIAMSON ET AL. V. THE STATE.

No. 1941. Decided October 30, 1912.

**Scire Facias—Forfeiture of Bail Bond—Judgment Final.**

Article 500, Code Criminal Procedure, sets out specifically the causes that will exonerate the defendant and his sureties from liability upon a bail bond, and articles 501, 503, Code Criminal Procedure, provide as to the discretion of the court in remitting in whole or in part a forfeiture on said bond, and where the principal in said bond purposely and wilfully failed to make his appearance at the proper term of the court, there was no error in the court's judgment in entering a full forfeiture of said bond and making same final.

Appeal from the District Court of Cass. Tried below before the Hon. P. A. Turner.

Appeal from a forfeiture of a bail bond and judgment final for $500. The opinion states the case.

*O'Neal & Figures,* for appellant.—Cited Jackson v. State, 13 Texas, 218.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The record in this case shows that Ambrose Williamson, prior to September 2, 1911, had been indicted by the grand jury of Cass County for a felony and that upon his arrest he gave a proper bail bond with J. A. Williamson and T. N. Golden, appellants herein, as sureties for his proper appearance at the next term of the District Court of said county; that he did not so appear when his case was called for trial on September 7, 1911, and that thereupon forfeiture nisi of said bond was had and entered; that the proper citation was issued and served and that the defendants duly appeared and answered therein and on February 27, 1912, the court heard all the evidence and made the nisi judgment final for the full amount of said bond $500 and all costs.

The evidence was heard on this final trial when this final judgment was rendered and entered, and it is shown that in a trial before the

court without a jury the appellant Ambrose Williamson first attended the term of said court and was so in attendance "right up to a few moments before it was called for trial and the forfeiture taken;" that he had some process issued for witnesses before then and either they had not been served or were not in attendance; that he had gone to the sheriff several times about it and the sheriff told him he would do his very best to get his witnesses but that he had so much work to do that his deputies were all out. Thereupon, when the case was about to be called and his witnesses still absent and fearing that the court would not postpone or continue his case, he left the court and county seat, not going to his home where he lived with his father, but to a different place at his uncle's and stayed there, and later went on home and had his father to notify the sheriff that he wished to surrender and make a new bond which he afterwards did. The sheriff testified that the appellant Ambrose Williamson had been in attendance upon the court until a few minutes before his case was called for trial and when called and the forfeiture taken, a warrant was issued for his rearrest, but that he was unable to find him until after the adjournment of the court which ended the latter part of September, 1911.

It was shown that one of the sureties, Golden—the other surety, J. A. Williamson being the father of the appellant Ambrose—a few days after the forfeiture went to see the sheriff and wanted Ambrose rearrested and offered to put up $50 to assist in bringing about his arrest. The sheriff told him not to offer a reward for the arrest of the appellant, Ambrose Williamson, that it might scare him out of the country and it seems, thereupon no reward was offered for his rearrest. After the adjournment of the court for that term the sheriff was informed, through the other surety, the appellant Ambrose Williamson's father, that Ambrose was then at home and would make a new bond which he did and that afterwards he stood a trial and was convicted in the said felony charge against him and was, at the time this final hearing was had upon the final forfeiture, in the sheriff's custody and in jail pending the motion for new trial in that case. The sureties testified that they were in no way responsible for the defendant's failure to appear in accordance with said bond. He did not make the new bail bond until November 24, 1911. Mr. Golden, one of the sureties, testified that he proposed to the sheriff to offer a reward of $50 for the rearrest of the appellant when he first learned of the forfeiture some two or three days thereafter but the sheriff advised him not to do this and that he afterwards put up $20 with another officer to secure the rearrest of the defendant and that he continued his efforts to have him rearrested up to the time he surrendered and made his new bond on November 24, 1911. What efforts the sureties made is not further shown. Neither is it shown that the surety Golden was out ultimately his $20. He simply testified that he put it up with another officer. It seems that the appellant was not rearrested by any officer but that

he merely notified the officer that he had returned to his home and was ready and willing to make a new bail bond which he did.

Appellant contends that the facts above stated were a defense to the forfeiture, and the court abused his discretion in not setting aside the nisi forfeiture and in rendering a judgment final on the bond.

This is a companion case to Henry Johnson et al. v. State, this day affirmed and what is said therein of the law applicable thereto is also applicable here.

Article 500, Code Criminal Procedure, sets out specifically the causes that will exonerate the defendant and his sureties from liability upon such forfeiture as is shown in this case and says that those "and no other" will exonerate him. This case clearly does not come within any of those causes which the law says, "and no other" will exonerate them. Then article 501, Code Criminal Procedure, prescribes that when upon the trial of such a case no sufficient cause is shown for the failure of the principal to appear the judgment shall be made final against him and his sureties for the amount in which they are respectively bound. It is true that article 503, Code Criminal Procedure, prescribes that if before final judgment is entered the principal appear or be arrested and lodged in the jail of the proper county the court may in its discretion remit the whole or part of the sum specified in the bond. These statutory provisions leave the matter discretionary with the lower court and not with this. The record, as shown above, shows that while the sureties may not have been at fault for the appellant not being present when his case was called for trial it also shows that he voluntarily and purposely left the court and the county seat and hid out to prevent his case from being tried, and that he did not let his whereabouts be known and avoided arrest until after the term of court, where he was bound to appear, had adjourned. It is no defense in a case of this kind for the sureties to show that they were not at fault and had nothing to do with the appellant purposely and wilfully escaping and not complying with the provisions of the bond. If that were true, bail bonds would be a farce and none of them could ever be collected and an accused person could from term to term make and forfeit his bond and prevent a trial and his sureties would incur no liability. It is true the law does not seek to punish the sureties. But when they go on such bonds it is contemplated that if the accused does not comply therewith and purposely and wilfully forfeits the same that they shall pay the amount, unless in the discretion of the lower court a part or all of it is remitted. State v. Warren, 17 Texas, 283; Haverty v. State, 32 Texas, 602; Barton v. State, 24 Texas, 251; Lee v. State, 25 Texas Crim. Rep., 331.

We can not say in this case that the court below abused its discretion in rendering the judgment for the full amount in this case and it is affirmed.

*Affirmed.*