**John GIBSON et al., Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 39286.**

Court of Criminal Appeals of Texas.

March 16, 1966.

Rehearing Denied May 11, 1966.

Cox & Hurt, Plainview, for appellants.

William Hunter, Dist. Atty., Dalhart, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

This is a consolidation of four bond forfeiture proceedings wherein the sureties alone appeal.

The record shows that appellants, as sureties, entered into appearance bonds after four indictments were presented charging the principal herein with the commission of felony offenses. The first cause was set for trial on October 27, 1964, at which time the principal failed to appear. He also failed to make an appearance on May 26, 1965, when the remaining causes were called for trial. Judgments nisi were entered against the sureties, and the record

shows that on September 2, 1965, prior to these judgments becoming final, the principal returned to custody. Appellant's prayer for a remittitur in whole or in part was refused by the trial court, who ordered a total forfeiture of $11,000 on the four bonds.

On appeal, the sureties contend that Article 439, Vernon's Ann.C.C.P., now Article 22.16, Code of Criminal Procedure, 1965, compels a remittitur of all or part of this forfeiture because of the mitigating circumstances shown in the statement of facts, and they seek reversal of the trial courts' judgment, or in the alternative, that this court overrule the trial court's refusal to grant a remittitur.

A review of the statement of facts discloses that the sureties went to great length in attempting to locate the principal in order to return him to custody and trial. Although they were unable to produce itemized accounting of expenses incurred in their efforts to secure the return of the principal, Gibson, appellant's estimation was that between $3,000 and $4,000 was spent by the sureties for telephone calls, correspondence, wanted circulars, photographs, and fees to detective agencies and individual investigators. $318 in expenses incurred by the County Sheriff's Office was reimbursed by the sureties. The sheriff testified that he knew nothing the sureties could have done to effect the re-arrest of the principal that they did not do. It is this diligence in their efforts to return the principal for trial which appellants contend dictates that this forfeiture should be remitted.

Appellant does not deny that the principal was in court on October 26, 1964, and was aware that his cause was set for trial on the following day; that he left his residence and took all his possessions with him and did not appear when his case was called, or when any of his other three cases were called; that there was evidence that he was at one time in San Francisco, at another time in Penn-

sylvania, where he was under arrest for a while; that he continued his flight to Louisiana after being released on bond in Pennsylvania; and that only after avoiding apprehension for about ten months did he turn himself in to Deaf Smith County officers.

Article 439, supra, provides:

"If, before final judgment is entered against the bail, the principal appear or be arrested and lodged in jail of the proper county, *the court may, at its discretion,* remit the whole or part of the sum specified in the bond or recognizance." (Emphasis added)

Appellants rely upon Johnson v. State, 172 Tex.Cr.R. 624, 361 S.W.2d 574; Ricard v. State, 171 Tex.Cr.R. 456, 350 S.W.2d 938; and Williams v. State, 159 Tex.Cr.R. 443, 265 S.W.2d 92, to support their contention that the trial court erred in failing to grant a remittitur as authorized by this statute.

In Johnson and Ricard, the trial judge was laboring under the impression that he had not authority or discretion to reduce the amount of forfeiture. In a concurring opinion in Ricard, this writer pointed out that discretionary power is vested in the trial court and his failure to exercise such power—that is, his failure to even consider the matter of a remittitur and make a decision one way or the other—would be an abuse of discretion susceptible to remedy by this court. In concurring in the affirmance of that judgment conditioned upon partial remittitur by the state, it was this member of the court's view that:

"By the majority opinion in this case we are giving to the trial court an opportunity to do that which he thought he had no authority to do, or, if he disagrees with us, then he may try the lawsuit again.

"*I do not doubt the power of the trial court to decline to remit,* but I think the trial court clearly demonstrated by his statements that he did not consider

he possessed any authority to remit in this case." Ricard, supra. (Emphasis added)

The record in Williams v. State, 159 Tex. Cr.R. 443, 265 S.W.2d 92, discloses that the possibility of a remittitur was never brought in issue in the trial court, and there is no indication that the trial court exercised any discretion on this point. The defendants in their answer to the judgment nisi made no prayer for a remittitur other than the general prayer "for such other and further relief, special and general, as they may be entitled to in the premises." The defendants also moved for an instructed verdict or, alternatively, dismissal of the jury and judgment rendered that the state take nothing. Again, there was no request for a remittitur. The same is true of their motion for new trial. In short, there is no indication that the trial judge was ever called upon to grant a remittitur or that he exercised discretion on that point, which brings that case in point with the Ricard case. The facts in that case show that the principal absented himself for only about 38 hours, during a weekend, and that no expense was incurred in his reapprehension. In addition, the record shows that the principal, who was one of the appellants, had been held in contempt for his absence and given the maximum penalty of three days in jail as well as a fine of $100. He had also been tried for violation of the liquor law, the charge which led to the making of the bond forfeited, and had received 90 days in jail and a $150 fine. This Court held that:

"Under the circumstances here present, we are of the opinion that the court should have exercised his discretion and remitted a part of the sum specified in the bond herein sued upon." 265 S.W.2d 92, 95.

If that case stands for the proposition, which I do not concede it does, that this Court will review *de novo* the record of a bond forfeiture proceeding and determine whether or not a remittitur should be awarded, after the trial court has found that the principal willfully absented himself, and has decided that the circumstances do not merit remittitur, then, that case stands alone in so holding.

The state cites Johnson v. State, 68 Tex.Cr.R. 51, 150 S.W. 890, where this Court stated:

"This discretion (to grant remittitur) is confided to the trial judge, and not to this court; and it would only be in those instances where the record disclosed he had abused the discretion confided in him would we be authorized to disturb the judgment. If Johnson willfully and intentionally absented himself to prevent a trial of his case at that term of the court, and the court so found as a fact, making a forfeiture of the full amount of the bond final would not be an abuse of his discretion." 150 S.W. 890, 891.

In Williamson v. State, 68 Tex.Cr.R. 53, 150 S.W. 892, where the same question was considered, the following was stated:

"It is no defense in a case of this kind for the sureties to show that they were not at fault and had nothing to do with the appellant purposely and willfully escaping and not complying with the provisions of the bond. If that were true, bail bonds would be a farce, and none of them could ever be collected, and an accused person could, from term to term, make and forfeit his bond and prevent a trial, and his sureties would incur no liability. It is true the law does not seek to punish the sureties. But when they go on such bonds it is contemplated that if the accused does not comply therewith, and purposefully and willfully forfeits the same, that they shall pay the amount, unless, in the discretion of the lower court, a part or all of it is remitted." 150 S.W. 892, 893.

Article 439 authorized the trial judge, at his discretion, to remit forfeitures

 

in cases which merit such action, such as where the accused fails to appear due to a mistake, or unavoidable delay, or any other situation where forfeiture if full would, in the trial judge's opinion, be inequitable.

In the case at bar, the trial judge heard the evidence; he saw the witnesses; he is aware of the expense incurred by the court and county as a result of the principal's failure to appear; he knows to what extent the jury and court were inconvenienced by the principal's unauthorized absence; and he knows to what extent his trial docket has been disrupted by the changes necessitated by the principal's failure to appear for trial. He has exercised his discretion and has declined to grant any remittance, which is within his power, and this Court will not overturn his decision.

Counsel for the sureties argues that, as a matter of public policy, remittiturs should be encouraged in cases coming under the terms of Article 439, because a refusal to grant the same would deprive the state of valuable aid which the bondsmen might give the officers in their efforts to apprehend principals who "jump bail." We are not overly concerned with this possibility. Insuring that the principal appear before the court at the time designated is the bondsmen's "stock in trade" and, unless he is able to perform this service consistently, he will not long be in business. It therefore behooves bondsmen, as sound business practice, to impress upon the court and the principal alike that "bail jumpers" for whom they are surety will inevitably be caught and returned to trial. The realization that their bond will be forfeited in the event the principal fails to appear might have the effect of making bondsmen somewhat more selective as to which persons they will act as surety, and it might increase the surveillance exercised by the surety over the principal while he is at large on bond, but it should not lessen the ardor with which the surety pursues the principal who fails to appear for his trial.

Appellants contracted with the state to pay a total of $11,000 in the event Gibson, the principal, failed to appear at the times set for his trials. For entering into this contract they received a fee commensurate with the risk they knew they were assuming. Generally speaking, sureties are in the business of making bond, they are acquainted with morals and characteristics of their clientele, they are aware of the possible consequences of the surety-principal relationship, and are not inexperienced in the applicable law. People far less knowledgeable of the law are consistently held to the terms of the contracts into which they choose to enter. Gibson did not answer the docket call of any of his four causes, and we see no abuse of discretion in the trial court's decision that the bond be forfeited.

The judgment is affirmed.

MORRISON, J., dissents.