Frances WILLIAMS, Principal, and
Richard E. Langlois, Surety,
Appellants,

v.

The STATE of Texas, Appellee.

No. 04–83–00030–CV.

Court of Appeals of Texas,
San Antonio.

April 11, 1984.

Richard Langlois, San Antonio, for appellants.

Sam Milsap, Jr., Barry Hitchings, Bexar County District Attorney's Office, San Antonio, for appellee.

Before ROBERTS, KLINGEMAN and MURRAY, JJ.*

## OPINION

TRUMAN E. ROBERTS, Justice.

This is an appeal from an order of the District Court denying, in part, appellant's motion for remittitur of the principal's bond. We affirm.

### I.

On March 20, 1979, the principal, Frances Williams, having been previously indicted for the felony offense of theft and incarcerated, was released from confinement pursuant to the execution of a bail bond in the amount of five thousand dollars. The appellant, Richard Langlois, was the surety upon said bond.

On April 11, 1979, the principal entered a plea of guilty to the above indictment and applied to the District Court for probation. A hearing on the application for probation was set for June 11, 1979. However, the principal failed to appear on June 11, 1979, and a bond forfeiture was declared at that time. Judgment *nisi* was entered on May

---

* Assigned to this case by the Chief Justice of the Supreme Court of Texas as authorized pursuant to Paragraph (d) of Article 1812, Texas Revised Civil Statutes as amended by H.B. 2244 (Acts 1983, 68th Leg., p. 1912, Ch. 354, Sec. 1, effective June 16, 1983).

27, 1981, and an amended judgment *nisi* was entered on November 5, 1981.

Thereafter, on December 11, 1981, summary judgment was rendered in open court against the principal and the appellant, jointly and severally, in the amount of five thousand dollars. The judgment was signed on December 17, 1981.

On January 15, 1982, the appellant timely filed a motion for new trial. TEX.R.CIV.P. 329b(a). On March 2, 1982, the appellant's motion for new trial was overruled by operation of law. TEX.R.CIV.P. 329b(c). Then on April 1, 1982, the judgment became final and the District Court lost plenary power over the judgment. TEX.R.CIV.P. 329b(e).

Nevertheless, on May 25, 1982, the appellant filed a motion for remittitur pursuant to TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13(b) (Vernon Supp.1984). That motion and accompanying sworn affidavit alleged that the appellant had located the principal, that the principal was confined in the Ohio Reformatory for women under the alias of Lillie Jackson, that the principal had been so confined since September 1981, that the appellant had expended money to locate the principal, and that the principal was being returned to custody, in part, as a result of money spent and information furnished by appellant. Under the authority of TEX. REV.CIV.STAT.ANN. art. 2372p–3, § 13(b) (Vernon Supp.1984), the appellant sought remittitur of at least ninety-five percent of the five thousand dollar bond previously forfeited.

The following day, May 26, 1982, the principal was in fact placed in the Bexar County jail.

In response to the appellant's motion for remittitur, the State filed a plea to the jurisdiction. Therein, the State asserted that the District Court had no jurisdiction to grant a remittitur after judgment on the bond forfeiture had become final. According to the State, TEX. CONST. art. IV, § 11 and TEX.CODE CRIM.PROC.ANN. arts. 48.01 through 48.03 (Vernon 1979), afford the Governor *exclusive* power to remit bail bond forfeitures after final judgment. The State also asserted that the mandatory remittitur (of at least ninety-five percent) contained in TEX.REV.CIV. STAT.ANN. art. 2372p–3, § 13(b) was unconstitutional.

On June 18, 1982, the District Court held a hearing on the appellant's motion for remittitur and the State's plea to the jurisdiction. The District Court: (1) denied the State's plea to the jurisdiction; (2) denied the appellant's request for ninety-five percent remittitur; (3) held that based on money spent and information supplied by the appellant, the principal had been returned to custody; (4) granted remittitur in the amount of eighty-five percent of the five thousand dollar bond forfeiture; (5) held TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13(b) (Vernon Supp.1984), constitutional, notwithstanding the State's challenge that it violated TEX. CONST. art. IV, § 11 by authorizing remittitur after final judgment; and (6) held TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13(b) (Vernon Supp.1984), unconstitutional insofar as it usurped a District Court's discretion to grant remittitur of less than ninety-five percent of the forfeited bond. From that judgment, the appellant perfected an appeal.

## II.

The appellant's sole contention on appeal is that "the trial court abused its discretion in denying a remittitur to the surety [appellant] of at least ninety-five (95%) percent of the forfeited bond." [Explanation supplied.]

The issue, although simply stated, involves questions of statutory construction and constitutional interpretation. Stripped of excess verbiage, two primary issues are presented: (A) Does TEX.REV.CIV.STAT. ANN. art. 2372p–3, § 13(b) (Vernon Supp. 1984), violate TEX. CONST. art. IV, § 11 insofar as it purports to authorize remittitur after a final judgment on the forfeited bond; and (B) Does TEX.REV.CIV.STAT. ANN. art. 2372p–3, § 13(b) (Vernon Supp. 1984), violate TEX. CONST. art. II, § 1 (i.e., separation of powers) insofar as it

purports to *mandate* remittitur of at least ninety-five percent of the forfeited bond?

## A.

Our resolution of the first issue necessarily involves an examination of the statutory framework governing bond forfeitures, exoneration and remittitur of bond forfeitures, and the case law interpreting those statutes.

Forfeiture of bail is governed, generally, by the provisions of TEX.CODE CRIM. PROC.ANN. art. 22.01 *et seq.*, provides, *inter alia*, a procedure for: (1) a judicial determination of forfeiture; (2) notice to the principal and surety of the forfeiture; (3) trial of the merits, if necessary; (4) entry of final judgment; and (5) exoneration or remittitur of the liability of the principal and surety.

Of particular importance is TEX.CODE CRIM.PROC.ANN. art. 22.10 (Vernon Supp.1984), which provides:

When a forfeiture has been declared upon a bond, the court or clerk shall docket the case upon the scire facias or upon the civil docket, in the name of the State of Texas, as plaintiff, and the principal and his sureties, if any, as defendants; *and the proceedings had therein shall be governed by the same rules governing other civil suits.* (Emphasis added.)

In *Blue v. State*, 341 S.W.2d 917, 919 (Tex.Cr.App.1960), the Court, on State's Motion for Rehearing, construed TEX. CODE CRIM.PROC.ANN. art. 433, the direct predecessor to current TEX.CODE CRIM.PROC.ANN. art. 22.10, (Vernon Supp.1984). The Court there stated:

The proceedings relating to Bond Forfeiture are entirely statutory. *Nicholas*

*v. State*, 158 Tex.Cr.R. 367, 255 S.W.2d 522.

A bond forfeiture is a criminal action, but after the entry of judgment nisi all the proceedings, unless otherwise provided, are governed by the same rules as govern in civil causes; that it, by the applicable Rules of Civil Procedure. See cases cited under Art. 433 Vernon's Ann. C.C.P., Note 2. (Emphasis in original.)

Of similar importance is TEX.CODE CRIM.PROC.ANN. art. 22.12a (Vernon Supp.1984), which provides:

After a judicial declaration of forfeiture is entered, the court may proceed with the trial required by Article 22.14 of this code. The court may exonerate the defendant and his sureties, if any, from liability on the forfeiture, remit the amount of the forfeiture, or set aside the forfeiture only as expressly provided by this chapter.

The following additional provisions are also germane to our disposition: (1) TEX. CODE CRIM.PROC.ANN. art. 22.13 (Vernon 1966) which provides for the exoneration of liability of a principal and surety in certain situations; (2) TEX.CODE CRIM. PROC.ANN. arts. 22.14 and 22.15 (Vernon 1966), which provide for final judgment after trial or by default; and (3) TEX.CODE CRIM.PROC.ANN. art. 22.16 (Vernon Supp.1984) which provides for remittitur to the principal and/or the surety in certain situations.[1]

In addition to the foregoing, TEX.REV. CIV.STAT.ANN. art. 2372p–3, § 13, entitled "Remittitur of Forfeited Bonds," provides that:

Sec. 13. (a) Prior to final judgment on any forfeiture of an appearance bond in a criminal case the attorney for the state may recommend to the court settle-

---

1. TEX.CODE CRIM.PROC.ANN. art. 22.16, states:

    If, before final judgment is entered against the bail, the principal appears or is arrested and lodged in jail of the proper county, the court may, at its discretion, remit the whole or part of the sum specified in the bond if the arrest or appearance is a direct result of money spent or information furnished by the sure-

ty or is because of the principal's initiative in submitting himself to the authority of the court, sheriff, or other peace officers.
This statute was amended at the same time and in the same Senate Bill that enacted TEX.CODE CRIM.PROC.ANN. art. 22.12a, and amended TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13. *See* note 2, *infra*, and accompanying text.

ment for an amount less than that stated in the bond, or the court may upon its own motion approve such settlement.

(b) After a forfeiture, if the defendant is incarcerated within two years of a judgment nisi, the bondsman shall be entitled to a remittitur of at least 95 percent if he presents a sworn affidavit stating that the defendant was returned to custody, in part, as a result of money spent of information furnished by the bondsman.

The remittitur shall be credited against an unpaid judgment of forfeiture or if the judgment has been paid, the treasurer shall refund at least 95 percent.

(c) The surety on appearance bonds in criminal cases shall be absolved of liability upon disposition of the case, and disposition as used herein shall mean a dismissal, acquittal, or finding of guilty on the charges made the basis of the bond.

■ On the surface, TEX.CODE CRIM. PROC.ANN. art. 22.12a and TEX.REV. CIV.STAT.ANN. art. 2372p–3, § 13, appear to conflict. However, these two Articles were *both* enacted in their current form[2] in S.B. No. 727. *See* Acts 1981, 67th Leg., p. 875, ch. 312, Sec. 1 and 2, eff. Aug. 31, 1981.[3] The fact that both of these Articles were simultaneously enacted complicates our task in light of the Code Construction Act. TEX.REV.CIV.STAT.ANN. art. 5429b–2, §§ 1.01 *et seq.*[4]

Furthermore, in addition to the foregoing statutes, TEX.CODE CRIM.PROC.ANN. art. 48.01 *et seq.*, and TEX. CONST. art. IV, § 11 are relevant to our inquiry. For instance, TEX.CODE CRIM.PROC.ANN. art. 48.04 provides that "[t]he Governor shall have the power to remit forfeitures of bail bonds." TEX. CONST. art. IV, § 11 provides, in pertinent part, that:

In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons; and under such rules as the Legislature may prescribe, and upon the written recommendation and advice of a majority of the Board of Pardons and Paroles, he shall have the power to remit fines and forfeitures. The Governor shall have the power to grant one reprieve in any capital case for a period not to exceed thirty (30) days; and he shall have power to revoke conditional pardons. With the advice and consent of the Legislature, he may grant reprieves, commutations of punishment and pardons in cases of treason.

■ Our review of all the provisions of TEX.CODE CRIM.PROC.ANN. art. 22.01, *et seq.*, art. 48.01, *et seq.*, TEX.REV.CIV. STAT.ANN. art. 2372p–3, § 13, construed as we must in light of the Code of Construction Act, TEX.REV.CIV.STAT.ANN. art. 5429b–2, § 1.01 *et seq.*, and TEX. CONST. art. IV, § 11 leads us to the following conclusions regarding the applicability and relationship of said provisions during each of the three time periods relevant to a bond forfeiture:[5]

2. TEX.CODE CRIM.PROC.ANN. art. 22.12a, was a new statute, while TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13, was an amendment of a previous version, to wit: old Article 2372p–3, § 12(a). *See* Acts 1973, 63rd Leg., p. 1520, ch. 550 eff. Aug. 27, 1973, discussed in *Fernandez v. State,* 516 S.W.2d 677 at 679–680 (Tex.Cr.App. 1974).

3. These amendments became effective *before* the amended judgment *nisi* was entered (i.e., November 5, 1981). Thus, under § 3.02 of the Code Construction Act, TEX.REV.CIV.STAT. ANN. art. 5429b–2, there can be no question that they are applicable to all proceedings which

occurred after the entry of amended judgment *nisi.*

4. Neither the State nor the appellant has cited or relied upon the Code Construction Act. The express provisions of the Act render it applicable to the resolution of the apparent conflict involved herein. *See* TEX.REV.CIV.STAT.ANN. art. 5429b–2, § 1.02 (Vernon Supp.1984).

5. Due to the facts of this case, we need not consider the effect of an appeal [from a final judgment of forfeiture] on our analysis. We will let this issue await a concrete factual dispute.

1. After the entry of judgment *nisi* (i.e., a judicial declaration of forfeiture), but before trial (as envisioned by TEX.CODE CRIM.PROC.ANN. art. 22.14).

After a judicial declaration of forfeiture and entry of judgment *nisi*, as provided for in TEX.CODE CRIM.PROC.ANN. arts. 22.01 and 22.02, but before the trial mandated by TEX.CODE CRIM.PROC.ANN. art. 22.14, the liability of a surety and principal can be exonerated or remittitur ordered pursuant to the following statutes.

a. Surety's Liability.

A surety's liability during this period of time can be exonerated or remittitur ordered pursuant to: (1) TEX.CODE CRIM.PROC.ANN. art. 22.13; (2) TEX.CODE CRIM.PROC.ANN. art. 22.16; (3) TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13(a), and (4) TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13(b).

b. Principal's Liability.

A principal's liability during this period of time can be exonerated or remittitur ordered pursuant to: (1) TEX.CODE CRIM.PROC.ANN. art. 22.13; (2) TEX.CODE CRIM.PROC.ANN. art. 22.16; (3) TEX.CODE CRIM.PROC.ANN. art. 48.04; and (4) TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13(a).

2. At or after trial, as provided for by TEX.CODE CRIM.PROC.ANN. art. 22.14, but before final judgment.

Due to the express limitation of TEX.CODE CRIM.PROC.ANN. art. 22.12a, during this period of time the liability of a surety and principal can be exonerated or remittitur ordered only under the relevant provisions of Code of Criminal Procedure.

a. Surety's Liability.

A surety can seek relief under: (1) TEX.CODE CRIM.PROC.ANN. art. 22.13; and

(2) TEX.CODE CRIM.PROC.ANN. art. 22.16. TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13, is *not* applicable during this period of time due to our interpretation of TEX.CODE CRIM.PROC.ANN. art. 22.12a. It should be noted that TEX.CODE CRIM.PROC.ANN. art. 22.16 provides the surety with substantially the same protection as TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13(a).

b. Principal's Liability.

The express limitation of TEX.CODE CRIM.PROC.ANN. art. 22.12a, mandates that the principal can only eliminate or reduce his liability under: (1) TEX.CODE CRIM.PROC.ANN. art. 22.13; (2) TEX.CODE CRIM.PROC.ANN. art. 22.16; and (3) TEX.CODE CRIM.PROC.ANN. art. 48.04.

3. After Entry of Final Judgment.

After the entry of final judgment, regardless of whether final judgment is obtained via TEX.CODE CRIM.PROC.ANN. arts. 22.14 or 22.15, the liability of a surety and principal is controlled by the following provisions,[6] at least when no appeal is perfected from that final judgment.[7]

a. Surety's Liability.

TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13(b), is the only provision which may be relied upon to reduce a surety's liability. That provision, however, can only be relied upon if the statutory conditions are satisfied. In other words, TEX.REV.CIV. STAT.ANN. art. 2372p–3, § 13(b), will not apply during this time period unless the principal was incarcerated within two years of judgment *nisi and* the other statutory requirements are met. Even then, as more fully explained below, the amount of the remittitur is not necessarily 95 percent.

---

6. Of course, an equitable proceeding via bill of review is also available, but our discussion does not require consideration of this remedy. *See* TEX.R.CIV.P. 329b(f).

7. *See* Note 5, *supra.*

### b. Principal's Liability.

After final judgment, a *principal's* liability is totally in the hands of the Governor under TEX.CODE CRIM.PROC.ANN. art. 48.04, and TEX. CONST. art. IV, § 11.

Our conclusions must be reconciled with the State's assertions that: (1) TEX.CODE CRIM.PROC.ANN. art. 22.12a conflicts with TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13(b), and that by virtue of the conflict, TEX.CODE CRIM.PROC.ANN. art. 22.12a controls over TEX.REV.CIV. STAT.ANN. 2372p–3, § 13(b); and (2) TEX. REV.CIV.STAT.ANN. art. 2372p–3, § 13(b) infringes upon the Governor's powers under TEX. CONST. art. IV, § 11 to the extent that it can be relied upon to obtain remittitur after a judgment of forfeiture has become final and the District Court has lost plenary power.

▆ The State's first assertion is without merit. Our interpretation of the applicability of TEX.CODE CRIM.PROC.ANN. art. 22.12a, and TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13(b), vis-a-vis the three distinct time periods discussed above renders both statutes viable and not in conflict with one another. *Cf.* TEX.REV.CIV.STAT.ANN. art. 5429b–2, § 2.01 *et seq.* The State's first assertion is overruled.

Our resolution of the State's second assertion is more difficult. The State relies upon *State v. Dyches*, 28 Tex. 536 (1866); *Hedrick v. Sisk*, 73 Tex. 616, 11 S.W. 862 (1880); and *Walker v. State*, 103 S.W.2d 404 (Tex.Civ.App.—Waco 1937, no writ), for the proposition that after final judgment on a bond forfeiture and the loss of plenary power by a District Court over said judgment, the Governor has *exclusive* power to remit forfeitures of bail bonds as to both *principal and sureties.*[8]

A brief historical review of the constitutional power of the Governor to grant remittitur is necessary. TEX. CONST. of 1845, art. V, § 11, is the direct predecessor of the Governor's current power. Only minor variations in that power have been enacted. Indeed, the provisions of Article V, section 11 of the 1845 Constitution were identical to the provisions of subsequent enactments of Article V, section 11 of the 1861 and 1866 Constitutions. In 1869 a new constitution was adopted and the provisions of the former Article V, section 11 of the 1866 Constitution became Article IV, section 11. No significant changes in phraseology were adopted in the 1869 version of Article IV, section 11.

However, in 1876 a new constitution was adopted. Contained therein was Article IV, section 11, which was substantially identical to prior provisions of the Texas Constitutions enacted in 1845, 1861, 1866 and 1869. Article IV, section 11 of the Constitution enacted in 1876 provided the following with regard to the Governor's power to remit and pardon:

> In all criminal cases, except treason and impeachment, he shall have power after conviction, to grant reprieves, commutations of punishment and pardons; and under such rules as the Legislative may prescribe, he shall have power to remit fines and forfeitures. With the advice and consent of the Senate, he may grant pardons in cases of treason; and to this end he may respite a sentence therefor, until the close of the succeeding session of the Legislature; provided, that in all cases of remissions of fines and forfeitures, or grants of reprieve, commutation of punishment or pardon, he shall file in the office of the Secretary of State his reasons therefor.

Since 1876, Article IV, section 11 has been amended two times. In 1936, the Board of Pardons and Paroles was constitutionally created and two new paragraphs were added to Article IV, section 11.[9]

---

**8.** The State concedes the possibility that an equitable proceeding via bill of review after final judgment does not infringe upon the Governor's power. *See* TEX.R.CIV.P. 329b(f). Indeed *Walker v. State, supra* at 406, supports this proposition.

**9.** Those two paragraphs became the first and third paragraphs of Article IV, § 11. Old Article IV, § 11 became the second paragraph of new Article IV, § 11. We have not quoted the first and third paragraphs due to the fact that they are not relevant to the instant inquiry.

Thus what had formerly been Article IV, section 11 became the second paragraph of Article IV, section 11 [the two new paragraphs became the first and third paragraphs of Article IV, section 11] as of November 3, 1936. That second paragraph [old Article IV, section 11] was slightly altered by the 1936 amendment to provide:

In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons; and under such rules as the Legislature may prescribe, and upon the written recommendation and advice of a majority of the Board of Pardons and Paroles, he shall have the power to remit fines and forfeitures. The Governor shall have the power to grant one reprieve in any capital case for a period not to exceed thirty (30) days; and he shall have power to revoke paroles and conditional pardons. With the advice and consent of the Legislature, he may grant reprieves, commutations of punishment and pardons in cases of treason.

Thus, the 1936 amendments to Article IV, section 11 created a limitation on the Governor's power, to wit: the Board of Pardons and Paroles from a constitutional agency to a statutory agency. To accomplish this, the first paragraph of Article IV, section 11 was extensively amended and the third paragraph of Article IV, section 11 was deleted. The only change in the second paragraph of Article IV, section 11 was the deletion of two words.[10] As of November 9, 1983, the relevant portion of Article IV, section 11 provides:

In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons; and under such rules as the Legislature may prescribe, and upon the written recommendation and advice of a majority of the Board of Pardons and Paroles, he shall have the power to remit fines and forfeitures. The Governor shall have the power to grant one reprieve in any capital case for a period not to exceed thirty (30) days; and he shall have power to revoke conditional pardons. With the advice and consent of the Legislature, he may grant reprieves, commutations of punishment and pardons in cases of treason.

Thus, it is apparent that the Governor of Texas has consistently had the power[11] in criminal cases, after conviction, to grant remittitur of fines and forfeiture. According to the State, this power extends not merely to a defendant/principal relative to a bond forfeiture, but also to a surety relative to a bond forfeiture. The State's posture is facially supported by *State v. Dyches, supra,* and *Hedrick v. Sisk, supra.*

In *State v. Dyches, supra,* final judgment on a bond forfeiture was obtained against the sureties on the bond for the amount of the bond and costs. Then Governor Houston remitted to sureties the judgment, except as costs. No commissions for the attorneys representing the state and county were included in the execution issued for the costs. Those attorneys moved to re-tax the costs so as to collect the commissions. The District Court overruled the motion and an appeal was taken.

In affirming the District Court's denial of the motion, the Texas Supreme Court noted that Article V, section 11 of the Constitution and Article 809 of the existing Code of Criminal Procedure gave the Governor the power to remit forfeitures after conviction. The Court stated:

---

10. The two words deleted were "paroles and" which were contained in the clause "and he shall have power to revoke [paroles and] conditional pardons."

11. Subject, however, to the limitation placed on that power by the Legislature and/or the Board of Pardons and Paroles.

The power of the executive to act under the law clearly arises when there is a final judgment against the sureties on the bond or recognizance in the court of last resort. The judgment on the bond may properly be held as the conviction mentioned in the 809th article of the code, upon which the power is expressly given to the governor to remit fines and forfeitures. *Id.* at 541–542.

The Court went on to note that if the term conviction was limited to the defendant/principal's conviction of the criminal charge for which the bond had originally been obtained, the Governor could not remit a bond forfeiture to a surety if the defendant/principal was acquitted. *Id.* at 542–543. This, according to the Court, was not a proper interpretation of Article IV, section 11 and Article 809.

Similarly, in *Hedrick v. Sisk, supra,* then Governor Ireland granted a partial remittitur to the sureties after final judgment on a bail bond forfeiture. The executive proclamation was based on his authority under the "constitution and laws of this state." The issue on that appeal is unimportant to the present situation; the State relies on *Hedrick* to support its assertion that after final judgment the Governor has exclusive authority to grant remittitur.

██ In our opinion, these two cases decided in 1866 and 1889, respectively have little validity. The express language of current Article IV, section 11 and its language prior to the 1983 amendment limits the Governor's power of remittitur to criminal cases after conviction. While it is well established that bail bond forfeitures are "criminal cases," *Blue v. State, supra; Brewer v. State,* 576 S.W.2d 404, 405 (Tex. Cr.App.1979); *Tinker v. State,* 561 S.W.2d 200, 201 (Tex.Cr.App.1978), we cannot construe the language of Article IV, section 11 to encompass a *surety.* In other words, we cannot equate the term "after conviction" with the term after "a final judgment on a bond forfeiture." Our inability to equate

these two stems from the realization that although the word "conviction" is not defined by the Constitution or the Code of Criminal Procedure, the case law indicates that regardless of the context in which it is used, it *always* involves an adjudication of guilt. *McNew v. State,* 608 S.W.2d 166, 171–172 (Tex.Cr.App.1978). An adjudication of guilt is not the equivalent of an adjudication of contractual liability, which is exactly what a final judgment on a bond forfeiture declares. Without belaboring the point, we hold that TEX. CONST. art. IV, § 11 does not apply to sureties on a bail bond forfeiture.[12] Accordingly, we held that the District Court did not err by overruling the State's plea to the jurisdiction and granting remittitur pursuant to TEX. REV.CIV.STAT.ANN. art. 2372p–3, § 13(b), after the judgment had become final and the District Court had lost plenary jurisdiction.

**B.**

The issue remains, however, as to whether TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13(b), violates Article II, section 1 of the Constitution of the State of Texas insofar as it purports to *mandate* remittitur of at least ninety-five percent of the forfeited bond. Stated differently, the issue is whether TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13(b), violates the separation of powers doctrine by usurping judicial discretion and mandating a ninety-five percent remittitur.

Article II, section 1 of the Constitution of the State of Texas, entitled "DIVISION OF POWERS; THREE SEPARATE DEPARTMENTS; EXERCISE OF POWER PROPERLY ATTACHED TO OTHER DEPARTMENTS," provides:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confined to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to

---

12. Of course, the Governor has been given statutory authority to remit forfeitures of bail bonds. TEX.CODE CRIM.PROC.ANN. art. 48.04. We need not and hence do not decide whether this power extends to sureties.

another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Thus, Article II, section 1 establishes the three distinct branches of government. The Interpretative Commentary to Article II, section 1 sufficiently summarizes the relationship and function of the three branches:

> While the lines which separate the powers of the three departments of government, i.e., the legislative, the executive and the judicial, are not always clearly drawn, still, and broadly speaking, the legislative power prescribes what the law shall be in future cases arising under it, it creates the law; the executive power executes the law and discharges and fulfills the duties required by the functions of office; while the judicial power ascertains and enforces the law as created by the legislative power.

*See also Government Services Insurance Underwriters v. Jones*, 368 S.W.2d 560 (Tex.1963); *State Ex rel. Smith v. Blackwell*, 500 S.W.2d 97 (Tex.Cr.App.1973).

Given Article II, section 1 as a limitation on the power of one branch of government to infringe on the power of another branch of government, the issue evolves into one of ascertaining which branch of government has the power over remittitur of bail bond forfeitures. Although we have above discussed the power of the executive over sureties and principals/defendants and have held that TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 13(b) does not violate the Executive's power under Article IV, § 11 of our constitution, we have not yet expressly addressed this issue. Resolution of the issue, however, is clear given the provisions of Article V, § 1 and Article V, § 8 of our constitution. Article V, § 1, entitled "JUDICIAL POWER; COURTS IN WHICH VESTED," provides that:

> Section 1. The judicial power of this State shall be vested in one Supreme

Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law.

> The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereof.

Furthermore, Article V, § 8 of our constitution, entitled "JURISDICTION OF DISTRICT COURTS," provides, in pertinent part, that:

> The District Court shall have original jurisdiction ... in all suits in behalf of the State to recover penalties, forfeitures and escheats; ...

> \*      \*      \*      \*      \*      \*

> ... and shall have general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution, and such other jurisdiction, original and appellate, as may be provided by law.

■ Given Article V, §§ 1 and 8, there can be no question that the judicial branch of the government has been vested with power over bail bond forfeitures, subject to the executive's power after conviction (i.e., subject to Article IV, § 11).

The judiciary's power over remittitur of bail bond forfeitures had been broad. The Court of Criminal Appeals of Texas has consistently affirmed the power of the District Courts to exercise complete discretion in remission of bail bond forfeitures. *See e.g., State Ex rel. Vance v. Routt*, 571 S.W.2d 903 (Tex.Cr.App.1978); *Apodaca v. State*, 493 S.W.2d 856 (Tex.Cr.App.1973); *Gibson v. State*, 401 S.W.2d 822 (Tex.Cr.App.1966) (and cases cited therein).

■ Although the judiciary has historically been given discretion over remittitur of forfeited bail bonds, TEX.REV.CIV. STAT.ANN. art. 2372p–3, § 13(b) provides no discretion: remittitur of ninety-five percent is mandatory. Prior to the 1981

amendment to TEX.REV.CIV.STAT.ANN. art. 2372p–3, the remittitur provision which is now Section 13(b) thereof was Section 12(a). Section 12(a), prior to that amendment, stated:

> In each instance where a principal has been rearrested and returned to the county wherein his bond was made within 120 days after the date of the final judgment on the bond forfeiture and no appeal has been taken and provided that the principal was rearrested as a result of money spent or information furnished by the surety, the surety thereon may file a motion of remittance in the court commanding the appearance of the principal and the court shall order at least 50 percent of the amount paid on the judgment remitted. The payment shall be made by the county treasurer.

In *Robinson v. Hill,* 507 S.W.2d 521 (Tex.1974), the Texas Supreme Court was confronted with a constitutional challenge to the fifty percent remittitur. There, the appellants asserted that Section 12(a) violated TEX. CONST. art. III, § 55 which prohibits the Legislature from releasing or extinguishing the liability or obligation of any corporation or individual to the State or to any county or municipal corporation. The Court overruled the challenge and stated:

> In our opinion the provisions in question do not contravene Art. III, Sec. 55, because the court is authorized to order the remittitur only when the principal was rearrested as a result of money spent or information furnished by the surety. The remittitur is thus supported by a consideration deemed adequate by the Legislature, and we cannot say it is so inadequate that the provision for a remittitur is unconstitutional. *See City of Beaumont v. Fertitta,* 415 S.W.2d 902 (Tex.1967); *State v. City of Austin,* 160 Tex. 348, 331 S.W.2d 737 (1960).

It is apparent that in *Robinson, supra,* the Court did not address a contention similar to that asserted by the State herein. Since the Constitution affords the judicial branch the power over bail bond forfeitures and that power has historically involved discretion, we hold that the Legislative usurpation of that discretion violates Article II, § 1 of our constitution. In so doing, we are not unmindful of the relative absence of authority to support our position. Our review of *State Ex rel. Smith v. Blackwell, supra,* and *Hart v. City of Dallas,* 565 S.W.2d 373 (Tex.Civ.App.—Tyler 1978, no writ) and plain common sense convince us that the ninety-five percent mandatory remittitur infringes upon the judicial function.[13]

Accordingly, the judgment is affirmed.

---

13. Indeed, the usurpation of discretion renders § 13(b) unreasonable, if for no other reason that there is no necessary relationship between the amount of time and money spent by the surety and ninety-five percent of the forfeited bond.