**Frances WILLIAMS, Principal & Richard E. Langlois, Surety, Appellants,**

**v.**

**The STATE of Texas, Appellee.**

**No. 652–84.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 8, 1986.

---

Richard E. Langlois, San Antonio, for appellants.

Sam D. Millsap, Jr., Dist. Atty. and Barry P. Hitchings & Lawrence A. Smith, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

Appellant petitions this Court to review the Court of Appeals' upholding of the trial court's ruling that Article 2372p–3, Sec. 13(b), V.A.C.S. violates Article II, Sec. 1 of the Texas Constitution, the separation of powers provision, because it requires the trial court to remit at least 95 percent of a forfeited bond. *Williams v. State,* 670 S.W.2d 717 (Tex.App.—San Antonio 1984). The Court of Appeals opined that the judiciary has "historically been given discretion over remittitur of forfeited bail bonds" and that "the Legislative usurpation of that discretion violates Article II, Sec. 1 of our constitution." We granted the petition to determine the constitutionality of Article 2372p–3, Sec. 13(b), V.A.C.S.

Appellant-principal failed to appear at a scheduled hearing on June 14, 1979, and the trial court ordered her bond forfeited.[1] The judgment became final on March 2, 1982. On May 25, 1982, pursuant to Art. 2372p–3, Sec. 13(b), appellant-surety filed a motion for remittitur accompanied by a sworn affidavit satisfying the statutory requirements. After a hearing, the trial court denied appellant's request for 95 percent remittitur, finding that the statute was an unconstitutional usurpation of the district court's discretion to grant remittitur of less than 95 percent of the forfeited bond. The court remitted 85 percent. The Court of Appeals upheld that ruling.

A threshold issue which must be addressed is that of this Court's jurisdiction to entertain this appeal. While the instant case arises out of appellant's motion for remittitur, it "regards criminal matters." See Article V, Sec. 5 of the Texas Constitution. Prior decisions of this Court and the Supreme Court leave no doubt that a bond forfeiture proceeding is "criminal in nature." *Brewer v. State*, 576 S.W.2d 404 (Tex.Cr.App.1979); *State ex. rel. Vance v. Routt*, 571 S.W.2d 903 (Tex. Cr.App.1978); *Tinker v. State*, 561 S.W.2d 200 (Tex.Cr.App.1978); *Blue v. State*, 170 Tex.Cr.R. 449, 341 S.W.2d 917 (1960); *Glenn v. State*, 155 Tex.Cr.R. 498, 236 S.W.2d 809 (1951); *General Bonding & Casualty Ins. Co. v. State*, 73 Tex.Cr.R. 649, 165 S.W. 615 (1914); *Jeter v. State*, 86 Tex. 555, 26 S.W. 49 (1894). This appeal arises out of appellant's motion for remittitur filed after the judgment of the bond forfeiture became final. The motion comes out of, is related to, and, in essence, is the last part of the bond forfeiture proceeding wherein the surety seeks to recover some or all of the amount of the bond. See Art. 22.16, V.A.C.C.P. and Art. 2372p–3, Sec. 13(b), V.A.C.S. Because an action for remittitur arises out of the bond forfeiture proceedings and is directly related to those proceedings as the final step in the proceedings, the instant case, like those cases previously cited, is properly within our jur-

isdiction as a matter that is "criminal in nature." See general discussion in *General Bonding & Casualty Ins. Co.*, supra; Article V, Sec. 5.

We turn now to the constitutional issue. In order to address the separation of powers' argument we must first explain the applicable statutory framework within which Art. 2372p–3, Sec. 13(b) works. Art. 22.01 *et seq.* V.A.C.C.P., contain the procedures and directives governing the forfeiture of bail, including notice requirements, trial on the merits and remittitur provisions. Articles 22.12a and 22.16, V.A.C. C.P., and Art. 2372p–3, Sec. 13, V.A.C.S., are the statutes whose relationship most concerns us. Art. 22.12a states:

### POWERS OF THE COURT

After a judicial declaration of forfeiture is entered, the court may proceed with the trial required by Article 22.14 of this code. The court may exonerate the defendant and his sureties, if any, from liability on the forfeiture, remit the amount of the forfeiture, or set aside the forfeiture only as expressly provided by this chapter.

Art. 22.16 states:

### THE COURT MAY REMIT

If, before final judgment is entered against the bail, the principal appears or is arrested and lodged in jail of the proper county, the court may, at its discretion, remit the whole or part of the sum specified in the bond if the arrest or appearance is a direct result of money spent or information furnished by the surety or is because of the principal's initiative in submitting himself to the authority of the court, sheriff, or other peace officers.

Finally, Art. 2372p–3, Sec. 13, the civil statute at issue, reads:

### REMITTITUR OF FORFEITED BONDS

(a) Prior to final judgment on any forfeiture of an appearance bond in a crimi-

---

1. We rely on the trial court's findings of fact and conclusions of law for the dates.

nal case the attorney for the state may recommend to the court settlement for an amount less than that stated in the bond, or the court may upon its own motion approve such settlement.

(b) After a forfeiture, if the defendant is incarcerated within two years of a judgment nisi, the bondsman shall be entitled to a remittitur of at least 95 percent if he presents a sworn affidavit stating that the defendant was returned to custody, in part, as a result of money spent or information furnished by the bondsman.

The remittitur shall be credited against an unpaid judgment of forfeiture or if the judgment has been paid, the treasurer shall refund at least 95 percent.

(c) The surety on appearance bonds in criminal cases shall be absolved of liability upon disposition of the case, and disposition as used herein shall mean a dismissal, acquittal, or finding of guilty on the charges made the basis of the bond.

As the Court of Appeals noted, Art. 22.-12a, V.A.C.C.P., and Art. 2372p–3, Sec. 13(b), V.A.C.S., appear to conflict, as one permits the trial court discretion in remitting bond and the other commands the trial court to issue a 95 percent remittitur.

Both Article 22.12a and Art. 2372p–3, Sec. 13(b) were enacted in the same Senate bill at the same time as part of the amendments in the area of bond forfeiture procedures and bond provisions. See S.B. 727; Acts 1981, 67th Leg., p. 875, ch. 312, Secs. 1 and 4, eff. August 31, 1981. The legislative history offers little insight into the reasons for the change in Art. 2372p–3, Sec. 13(b). The bill analysis to S.B. 727 indicates a general desire to more strictly regulate the bonding business and the County Bail Bond Boards. However, after examining Sec. 12(a),[2] the predecessor to Sec. 13, and reading Art. 22.12a, Art. 22.16, and Art. 2372p–3, Sec. 13, together, keeping in mind the directives of the Code Construction Act, Art. 5429b–2, Secs. 1.01, *et seq.* V.A.C.S., the seeming conflict can be reconciled as the conflicting provisions refer to different time periods in forfeiture proceedings.

Art. 22.16 specifically refers to a time "before final judgment." Our review of Sec. 13(b) will show that it refers to a time after final judgment. Thus, the remittitur provisions can be harmonized.

Sec. 13 is divided into three subsections. Each subsection refers to a different and successive time period. Subsection (a) speaks to a time "prior to final judgment." Subsection (b), refers to a time "after a forfeiture." Reading subsection (b) as a whole, we interpret it to relate to a time after a final judgment on a forfeiture and within two years of a judgment nisi.[3] This interpretation is consistent with the provisions of its predecessor, Sec. 12(a), which specifically referred to a period of time after final judgment. Finally, subsection (c) addresses absolution of the surety's liability upon disposition, the last step in the process. Thus, each subsection of Sec. 13 essentially addresses a successive time frame of forfeiture proceedings, with the mandatory remittitur provision of Sec. 13(b) applying after final judgment.

Reading Art. 22.12a with Art. 22.16 shows that after a judicial declaration of forfeiture is entered and before a final judgment is entered, the court has discretionary remittitur power.

---

**2.** Art. 2372p–3, Sec. 12(a) reads:

In each instance where a principal has been rearrested and returned to the county wherein his bond was made within 120 days after the date of the final judgment on the bond forfeiture and no appeal has been taken and provided that the principal was rearrested as a result of money spent or information furnished by the surety, the surety thereon may file a motion of remittance in the court commanding the appearance of the principal and the court shall order at least 50 percent of the amount paid on the judgment remitted. The payment shall be made by the county treasurer.

**3.** If Sec. 13(b) were interpreted to mean any time up to two years after judgment nisi regardless of the finality of judgment, Sec. 13(b) and Art. 22.16 would conflict.

Art. 22.12a refers to a time "after a judicial declaration of forfeiture" which is defined in Art. 22.02.[4] The time after a judicial declaration of forfeiture is the beginning boundary for Art. 22.12a and the court's exercise of its discretionary power of remittitur. The outer boundary is limited by the provisions "expressly provided by this chapter," namely, by Art. 22.16. Art. 22.16 limits the trial court's remittitur of some amount of the bond to a time "before final judgment." Thus, a reading of Art. 22.12a with Art. 22.16 provides that after a judicial declaration of forfeiture is entered and before a final judgment is entered, the court may, in its discretion remit the whole or part of the amount.

Our interpretation of the bond forfeiture provisions harmonizes the statutes and gives substance to their workings. See Code Construction Act, Sec. 3.01, *et seq.* In sum, after a judicial declaration of forfeiture and before a final judgment is rendered, the trial court has discretion in remitting bond money. Art. 22.12a and Art. 22.16, V.A.C.C.P. After a final judgment has been rendered and within two years of a judgment nisi, Art. 2372p–3, Sec. 13(b) applies and the trial court must remit at least 95 percent of the bond amount when the statutory requirements are met.[5]

While we realize that the wisdom and reasonableness of statutes is left to the realm of the Legislature, we note that the wisdom of these statutes is dubious at best. Apparently, the policy behind Sec. 13(b) is to encourage bondsmen to find and turn in missing defendants. If they do so within two years of the judgment nisi and after the final judgment, the Legislature has decided to "reward" them by remitting almost the full amount of the bond. However, this makes little sense when comparing the result in cases applying the two

statutes, Art. 22.16 and Sec. 13(b). For example, Defendant A's bond is forfeited by the court, and through the diligent, strenuous efforts of the bondsman, is located and returned to custody in the proper county within one week of the judicial declaration of forfeiture. No final judgment has yet been entered so under Art. 22.16 the trial court, subject to review only for abuse of discretion, may remit 100 percent, 50 percent, 10 percent, or none at all, whatever it feels is proper. Defendant B has his bond forfeited by the court, and his bondsman reads Sec. 13(b). This bondsman simply does nothing until after final judgment has been rendered, whether it be six months, or one year, as long as it is within two years of the judgment nisi. Then, he checks around, locates the defendant, and calls law enforcement officials in whatever locale the defendant is situated, out of state perhaps. These officials arrest the defendant and hold him in their local jail. This bondsman then directs the trial court's attention to his compliance with Sec. 13(b) and gets 95 percent of his money back.

As these examples show, the statutes put a bondsman in the position of taking a chance with the trial court's discretion in remittitur even if they return a defendant quickly, or waiting until after final judgment and gaining a mandatory 95 percent remittitur. The rationale does not make much sense. As the Court of Appeals noted, "There is no necessary relationship between the amount of time and money spent by the surety and ninety-five percent of the forfeited bond." *Williams*, 670 S.W.2d at 727, n. 13.

■ We cannot and do not hold a statute unconstitutional because it is unwise or disagreeable to the courts. *Pecos and T.R. Co. v. Cox*, 104 Tex. 556, 140 S.W. 1078 (1911); *State v. Jackson*, 376 S.W.2d 341

4. Art. 22.02 states:
Bail bonds and personal bonds are forfeited in the following manner: The name of the defendant shall be called distinctly at the courthouse door, and if the defendant does not appear within a reasonable time after such call is made, judgment shall be entered that the State of Texas recover of the defend-

ant the amount of money in which he is bound, and of his sureties, if any, the amount of money in which they are respectively bound, which judgment shall state that the same will be made final, unless good cause be shown why the defendant did not appear.

5. See note 3, supra.

(Tex.1964). *McGregor v. Clawson*, 506 S.W.2d 922 (Tex.Civ.App.—Waco, 1974, no writ). However, we find that Sec. 13(b) is more troublesome than being merely unwise. The statute permits an "attack" on or modification of a final judgment entered by a trial court, and, as such, it cannot withstand constitutional challenge.

Article II, Sec. 1 of the Texas Constitution establishes the three branches of government. It states:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

This section has been interpreted to mean that a power which has been granted to one department of government may be exercised only by that branch to the exclusion of the others. *Ex parte Giles*, 502 S.W.2d 774, 780 (Tex.Cr.App.1974). The Interpretive Commentary to Article II, Section 1 notes:

> While the lines which separate the powers of the three departments of government, i.e., the legislative, the executive and the judicial, are not always clearly drawn, still, and broadly speaking, the legislative power prescribes what the law shall be in future cases arising under it, it creates the law; the executive power executes the law and discharges and fulfills the duties required by the functions of office; while the judicial power ascertains and enforces the law as created by the legislative power. Article I is a direct prohibition of the blending of the departments. Each department acts under a delegated limited authority, and if one exceeds its authority by usurping powers not belonging to it, its acts are a nullity, not binding upon the other departments, and may be disregarded by

them. See *Houston Tap Ry. Co. v. Randolph*, supra [24 T. 317 (1859].

Thus, in the instant case, if the judiciary has power over remittiturs of bond forfeitures and if Section 13(b) interferes with that power, Sec. 13(b) is unconstitutional.

■ We agree with the Court of Appeals' determination that Article V, Sec. 1 and Article V, Sec. 8 of the Texas Constitution vest power over bail bond forfeitures in the judicial branch of the government. Article V, Sec. 1 states:

Sec. 1. **Judicial power; courts in which vested**

> Section 1. The judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law.

> The legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto.

Art. V, Section 8 states, in pertinent part:

## JURISDICTION OF DISTRICT COURT

Sec. 8. The District Court shall have original jurisdiction in all criminal cases of the grade of felony; in all suits in behalf of the State to recover penalties, forfeitures and escheats, . . . .

■ It is clear from these constitutional provisions that the district court has power over bonds and thus as part of that power, it also has power over bond forfeitures. It is also clear that the Legislature may define certain parameters within the operation of the judicial branch, whether it be to mandate certain penalties, i.e., generally V.T.C.A. Penal Code, Sec. 12.42, Art. 37.-071, V.A.C.C.P.; certain procedures, i.e., the Texas Code of Criminal Procedure; or even rules of evidence. However, the Legislature may not interfere with the func-

tions and powers of the judicial branch so as to usurp those functions and powers.

Section 13(b) of Art. 2372p–3, V.A.C.S., violates Art. II, Sec. 1 of the Texas Constitution because it alters and undermines a trial court's final judgment in a bond forfeiture case, thus usurping a judicial function and power. As discussed previously, Sec. 13(b) operates after final judgment has been rendered and within two years of a judgment nisi. It commands the trial court to remit 95 percent of the amount of the bond regardless of the prior *final* judgment. The finality of the judgment is thus subject to revision and modification by the Legislature's mandate in Sec. 13(b). Art. II, Sec. 1 of the Texas Constitution, like Art. III of the United States Constitution, guarantees an independent judiciary and prevents the legislature and the executive from reviewing a judicial decision. See J. Nowak, R. Rotunda & J. Young, Constitutional Law 75–76 (2d ed. 1983). As the State's brief notes, the mandatory remittitur imposed by Sec. 13(b) "is tantamount to the Legislature's substitution of its opinion for that of the court's on the release of a previously fixed judgment liability."

In *Langever v. Miller*, 124 Tex. 80, 76 S.W.2d 1025 (1934), the Supreme Court declared unconstitutional a state law which required courts to reduce the amount of deficiency judgments to the extent of the difference between the actual value of the property sold under foreclosure and the amount it brought at such sale. In *Langever v. Miller*, Miller held a judgment against Langever for $1,420.94, which included interest and costs. Langever's property was sold pursuant to a foreclosure judgment and Miller bought the property for $25, thus leaving a then-existing deficiency judgment of about $1,400.00. The property was worth more than the remaining deficiency and Langever sought to have the deficiency discharged under the new law.

The Supreme Court stated that if the new law were to be given effect in this case a valid judgment would be set aside or annulled by legislative fiat. The status of

the judgment being final, "The Legislature, in view of the constitutional provision we are discussing, [Art. II, separation of powers] was without power to vacate, annul, set aside, reverse, or modify the decree, or to affect the process which the court had lawfully ordered for its execution. [Citations omitted]" *Langever v. Miller*, at 1035. The Court then further quoted Corpus Juris stating:

> " 'Where the litigation has proceeded to a judgment which determines the controversy on its merits, it is beyond the power of the legislature to alter or control.... A state legislature has no power to annul, set aside, or to reverse a judgment rendered by either, a state or a federal court.... The legislature cannot modify a judgment nor impair the remedies by which it may be enforced.' 12 C.J. p. 828, Sec. 302, p. 829, Secs. 303, 304."

■ While *Langever v. Miller*, supra, presents a slightly different fact basis because a new law that sought to set aside a judgment was in issue, the principle enunciated and explicated in *Langever v. Miller*, applies in the instant case. A valid, final judgment of a court may not be modified by the Legislature. Once actions have passed into judgment the power of the Legislature to disturb the rights created thereby ceases. *Langever v. Miller*, supra, 76 S.W.2d at 1037. See also *Jenckes v. Mercantile Nat. Bank at Dallas*, 407 S.W.2d 260 (Tex.Civ.App.—Dallas 1966) and *Ferguson v. Wilcox*, 119 Tex. 280, 28 S.W.2d 526 (1930). Sec. 13(b) permits just such a legislative modification. Although Sec. 13(b) is not a new law acting on a previously existing judgment—the situation presented in *Langever v. Miller*,—in effect, it does the same thing because it invalidates a pre-existing final judgment made by the judiciary under its constitutional grant of jurisdiction in bond proceedings. For this reason it must fail under this constitutional attack.

We agree with the Court of Appeals that *Robinson v. Hill*, 507 S.W.2d 521 (Tex. 1974) did not address a contention similar

to that asserted in the instant case. In *Robinson,* the constitutional challenge to the 50 percent remittitur was based upon Art. III, Sec. 55, which prohibits the Legislature from releasing or extinguishing the liability or obligation of any corporation or individual to the State or to any county or municipal corporation. The Supreme Court held that the 50 percent remittitur was "supported by a consideration deemed adequate by the Legislature, and we cannot say it is so inadequate that the provision for a remittitur is unconstitutional." *Robinson,* supra, 507 S.W.2d at 526. *Robinson,* supra, has no bearing upon the instant case.

The Texas Constitution gives the judicial branch power over bail bond forfeitures. The Legislature may, of course, pass laws to facilitate that power and regulate the procedures guiding the right to bail and the forfeiture of bail. However, the Legislature has no power to alter a final judgment rendered by the court in a bond forfeiture. Otherwise, the power of the judicial branch would be a mockery, subject to the whim of the Legislature. The finality of judgments would not exist and courts would be Legislative forums.

Sec. 13(b) of Art. 2372p–3, V.A.C.S. is unconstitutional under Art. II, Sec. 1, as it is a legislative infringement on judicial power. The trial court rendered a final judgment on the bond forfeiture in the instant case before a request for remittitur and the Legislature has no power or right to change that judgment. Therefore, the trial court was without jurisdiction to remit any amount once the judgment became final. Accordingly, the judgments of the trial court and the Court of Appeals holding Art. 2372p–3, Sec. 13(b), V.A.C.S., unconstitutional is affirmed, and the judgment of the trial court remitting 85 percent is vacated.

ONION, P.J., concurs in result.

WHITE, J., not participating.